1   **BRODSKY & SMITH**
    Evan J. Smith, Esquire (SBN 242352)
2   esmith@brodskysmith.com
    Ryan P. Cardona, Esquire (SBN 302113)
3   rcardona@brodskysmith.com
    9595 Wilshire Boulevard, Suite 900
4   Beverly Hills, CA 90212
    Phone: (877) 534-2590
5   Facsimile: (310) 247-0160

6   *Attorneys for Plaintiff*

7
                 UNITED STATES DISTRICT COURT
8
                 NORTHERN DISTRICT OF CALIFORNIA
9

10  DALE HANSEN,                          Case No.:

11              Plaintiff,                **Complaint For:**

12      vs.                               (1) Violation of § 14 (a) of the Securities
                                              Exchange Act of 1934
13  PLANTRONICS, INC., DAVE SHULL,        (2) Violation of § 20(a) of the Securities
    ROBERT C. HAGERTY, MARV TSEU,             Exchange Act of 1934
14  KATHY CRUSCO, BRIAN
    DEXHEIMER, GREGGORY                   **JURY TRIAL DEMANDED**
15  HAMMANN, GUIDO JOURET, TALVIS
    LOVE, MARSHALL MOHR, DANIEL
16  MOLONEY, and YAEL ZHENG,

17              Defendants.

18
            Plaintiff, Dale Hansen ("Plaintiff"), by and through his attorneys, alleges upon information
19
    and belief, except for those allegations that pertain to him, which are alleged upon personal
20
    knowledge, as follows:
21
                          **SUMMARY OF THE ACTION**
22
            1.      Plaintiff brings this stockholder action against Plantronics, Inc. ("Plantronics" or
23
    the "Company") and the Company's Board of Directors (the "Board" or the "Individual
24
    Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a)
25
    and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of
26
    Defendants' efforts to sell the Company to HP Inc. ("Parent") through merger vehicle Prism
27

28

                              - 1 -
                           COMPLAINT

Subsidiary Corp. ("Merger Sub") (collectively with "Parent", "HP") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 25, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, HP will acquire all of the remaining outstanding shares of Plantronics' common stock at a price of $40.00 per share in cash. As a result, Plantronics will become an indirect wholly-owned subsidiary of HP.

3.      Thereafter, on April 29, 2022, Plantronics filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction. On May 17, 2022, Plantronics filed a Definitive Proxy Statement on Form DEFM14A (the "Definitive Proxy Statement" and together with Preliminary Proxy Statement, "Proxy Statement" )  attaching the proxy statement with the SEC in support of the Proposed Transaction.

4.      In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement on May 17, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Plantronics, provided by Plantronics management to the Board and the Board's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Plantronics stockholder.

8.     Defendant Plantronics designs, manufactures, markets, and sells integrated communications and collaborations solutions for corporate customers, small businesses, and individuals in the United States, Europe, the Middle East, Africa, the Asia Pacific, and rest of the Americas. Plantronics is incorporated under the laws of the State of Delaware and has its principal place of business at 345 Encinal Street, Santa Cruz, California 95060. Shares of Plantronics common stock are traded on the New York Stock Exchange under the symbol "POLY".

9.     Defendant Dave Shull ("Shull") has been a Director of the Company at all relevant times. In addition, Shull serves as the Company's Chief Executive Officer ("CEO") and President.

10.     Defendant Robert C. Hagerty ("Hagerty") has been a director of the Company at all relevant times. In addition, Hagerty serves as the Chairman of the Company Board.

11.     Defendant Marv Tseu ("Tseu") has been a director of the Company at all relevant times. In addition, Tseu serves as the Vice-Chairman of the Company Board.

12.     Defendant Kathy Crusco ("Crusco") has been a director of the Company at all relevant times.

1       13.      Defendant Brian Dexheimer ("Dexheimer") has been a director of the Company at all relevant times.

14.      Defendant Greggory Hammann ("Hammann") has been a director of the Company at all relevant times.

15.      Defendant Guido Jouret ("Jouret") has been a director of the Company at all relevant times.

16.      Defendant Talvis Love ("Love") has been a director of the Company at all relevant times.

17.      Defendant Marshall Mohr ("Mohr") has been a director of the Company at all relevant times.

18.      Defendant Daniel Moloney ("Moloney") has been a director of the Company at all relevant times.

19.      Defendant Yael Zheng ("Zheng") has been a director of the Company at all relevant times.

20.      Defendants identified in ¶¶ 10 - 20 are collectively referred to as the "Individual Defendants."

21.      Non-Party HP Inc. provides personal computing and other access devices, imaging and printing products, and related technologies, solutions, and services in the United States and internationally. HP is headquartered in Palo Alto, CA and its shares are traded on the Nasdaq Stock Exchange under the symbol "HPQ."

22.      Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plantronics maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26. Plantronics, Inc. designs, manufactures, markets, and sells integrated communications and collaborations solutions for corporate customers, small businesses, and individuals in the United States, Europe, the Middle East, Africa, the Asia Pacific, and rest of the Americas. Its principal product categories include headsets, which comprises wired and wireless communication headsets; voice that includes open session initiation protocol and native ecosystem desktop phones, and conference room phones; video conferencing solutions and peripherals, including cameras, speakers, and microphones designed to work with a range of unified communication and collaboration, unified communication as a service, and video as a service environments, including RealPresence collaboration solutions of infrastructure to endpoints that allows people to connect and collaborate; and content sharing solutions. The company also offers services that include video interoperability, and hardware and support for our solutions and hardware devices, as well as professional, hosted, and managed services; and cloud management and analytics software, which enables information technology administrators to configure and update firmware, monitor device usage, troubleshoot, and gain understanding of user behavior. It sells its products through value-added resellers, integrators, direct marketing resellers, service

providers, direct and indirect resellers, network and systems integrators, enterprise distributors, wireless carriers, and mass merchants, as well as through both traditional and online retailers, and e-commerce channels under the Poly, Plantronics, and Polycom brands. Plantronics, Inc. was incorporated in 1961 and is headquartered in Santa Cruz, California.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the February 8, 2022 press release announcing its 2022 Q3 financial results, the Company highlighted such milestones as Revenue of $410 Million, Strengthening of strategic alliances, and an increase in Adjusted EBITDA of $10 Million.

28.     Speaking on these positive results, CEO Defendant Shull commented on the Company's positive financial results as follows, "Poly continues to benefit from a collaboration demand supercycle,"…"Offices around the world are under-equipped and filled with legacy communications technologies that are not cloud-enabled, not ready for video, and not adapted to the multiple communications platforms used by their employees and clients. Whether in the office, or with teams operating remotely, every business needs to connect people, partners, and customers - seamlessly. That's what Poly does."

29.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Plantronics.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Plantronics to enter into the Proposed Transaction without providing requisite information to Plantronics stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and interested third parties, whether these agreements differed from any other agreement with potentially interested parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

31.     On March 28, 2022, Plantronics and HP issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **PALO ALTO, Calif. and SANTA CRUZ, Calif.,** March 28, 2022 (GLOBE NEWSWIRE) -- HP Inc. (NYSE: HPQ) today announced a definitive agreement to acquire Poly (NYSE: POLY), a leading global provider of workplace collaboration solutions, in an all-cash transaction for $40 per share, implying a total enterprise value of $3.3 billion, inclusive of Poly's net debt.

> The acquisition accelerates HP's strategy to create a more growth-oriented portfolio, further strengthens its industry opportunity in hybrid work solutions, and positions the company for long-term sustainable growth and value creation.

> The rise of hybrid work is creating sustained demand for technology that enables seamless collaboration across home and office environments. Approximately 75% of office workers are investing to improve their home setups to support new ways of working1. Traditional office spaces are also being reconfigured to support hybrid work and collaboration, with a focus on meeting room solutions. Currently, there are more than 90 million rooms, of which less than 10% have video capability2. As a result, the office meeting room solutions segment is expected to triple by 20243.

> "The rise of the hybrid office creates a once-in-a-generation opportunity to redefine the way work gets done," said Enrique Lores, President and CEO of HP. "Combining HP and Poly creates a leading portfolio of hybrid work solutions across large and growing markets. Poly's strong technology, complementary go-to-market, and talented team will help to drive long-term profitable growth as we continue building a stronger HP."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dave Shull, Poly CEO and President, added: "I am thrilled about the opportunity this represents for Poly, our employees, partners and customers. The combination gives us an opportunity to dramatically scale, reaching new markets and channels, supercharging our innovation with a like-minded partner. This transaction offers compelling and certain value for our shareholders and speaks to the hard work done by our teams to become a recognized leader in helping businesses everywhere meet the challenges of a generational disruption in the way people work."

In a more hybrid world, cloud platforms like Zoom and Microsoft Teams will play an important role in innovating new experiences. Eric Yuan, Founder and CEO of Zoom added, "Highest quality audio and video has become an essential component of work across every industry, whether in an office, at home, or on the go. Bringing the Poly and HP offerings together will unlock new opportunities to partner with Zoom and turn any space into a hub for dynamic video collaboration."

Poly will help drive the growth and scale of HP's peripherals and workforce solutions businesses. Peripherals represent a $110 billion segment opportunity growing 9% annually, driven by the need for more immersive experiences. Workforce solutions represent a $120 billion segment opportunity that is growing 8% annually, as companies invest in digital services to set up, manage, and secure more distributed IT ecosystems. Poly's devices, software and services, combined with HP's strengths across compute, device management, and security, creates a robust portfolio of hybrid meeting solutions.

Poly is a leader in video conferencing solutions, cameras, headsets, voice and software. Together, HP and Poly will deliver a complete ecosystem of devices, software, and digital services to create premium employee experiences, improve workforce productivity, and provide enterprise customers with better visibility, insights, security, and manageability across their hybrid IT environments.

HP expects the transaction to be immediately accretive to HP's revenue growth, margins, and non-GAAP EPS at close. With the expanded value proposition of a complete hybrid work solution, combined with HP's scale and go-to-market capabilities, HP expects to realize substantial revenue synergies in peripherals as well as meeting room and workforce solutions. HP will be able to cross-sell across its global commercial and consumer sales channels, while driving incremental sales from combining Poly's products with HP's PC portfolio. As a result, HP expects to achieve $500 million of revenue synergies by FY25 and accelerate Poly's revenue growth to an approximately 15% CAGR over the first three years after closing. In addition, HP expects the transaction to improve Poly's operating margins by approximately six percentage points from current levels by FY25, driven by scale efficiencies across supply chain, manufacturing and overhead.

The transaction is expected to close by the end of calendar 2022, subject to Poly stockholder approval, required regulatory clearances, and the satisfaction of other

customary closing conditions. HP will finance the transaction through a combination of balance sheet cash and new debt.

This transaction is consistent with HP's capital returns program target. HP remains committed to aggressively buying back shares of at least $4 billion in FY22, and to returning significant capital to shareholders while continuing to invest in growth.

***Potential Conflicts of Interest***

32.     The breakdown of the benefits of the deal indicate that Plantronics insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Plantronics.

33.     Company insiders, currently own large, illiquid portions of Company stock as well as large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares Held Directly[1] | | Poly Restricted Stock, Poly RSUs and Poly PSUs[2] | | Total ($) |
|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares (#) | Value of Shares ($) | |
| Robert Hagerty[3] | 74,392 | 2,975,680 | 5,715 | 228,600 | 3,204,280 |
| Marvin Tseu[4] | 43,261 | 1,730,440 | 5,715 | 228,600 | 1,959,040 |
| Kathy Crusco[5] | 18,613 | 744,520 | 5,715 | 228,600 | 973,120 |
| Brian Dexheimer[6] | 124,560 | 4,982,400 | 5,715 | 228,600 | 5,211,000 |
| Greggory Hammann[7] | 36,261 | 1,450,440 | 5,715 | 228,600 | 1,679,040 |
| Guido Jouret[8] | 16,311 | 652,440 | 5,715 | 228,600 | 881,040 |
| Talvis Love[9] | — | — | 6,844 | 273,760 | 273,760 |
| Marshall Mohr[10] | 42,261 | 1,690,440 | 5,715 | 228,600 | 1,919,040 |
| Daniel Moloney[11] | 18,527 | 741,080 | 5,715 | 228,600 | 969,680 |
| Yael Zheng[12] | 7,392 | 295,680 | 5,715 | 228,600 | 524,280 |
| David Shull[13] | 188,577 | 7,543,080 | 262,831 | 10,513,240 | 18,056,320 |
| Charles Boynton[14] | 103,299 | 4,131,960 | 78,851 | 3,154,040 | 7,286,000 |
| Lisa Bodensteiner[15] | 28,693 | 1,147,720 | 39,597 | 1,583,880 | 2,731,600 |
| Carl Wiese[16] | 127,636 | 5,105,440 | — | — | 5,105,440 |
| Tom Puorro[17] | 36,834 | 1,473,360 | — | — | 1,473,360 |
| Kristine Diamond | 15,403 | 616,120 | — | — | 616,120 |
| Warren Schlichting[19] | 2,000 | 80,000 | — | — | 80,000 |

34.     Moreover, certain employment agreements with certain Plantronics executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

### Golden Parachute Compensation

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| David Shull | 4,664,725 | 10,513,240 | 85,628 | 15,263,593 |
| Robert Hagerty[5] | — | 228,600 | — | 228,600 |
| Charles Boynton | 1,974,231 | 3,154,040 | 92,789 | 5,221,060 |
| Lisa Bodensteiner | 887,065 | 1,583,880 | 85,289 | 2,556,234 |
| Carl Wiese | 1,100,275 | — | 82,163 | 1,182,438 |
| Tom Puorro[6] | — | — | — | — |
| Mary Huser[7] | — | — | — | — |

35.     The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Plantronics, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Proxy Statement

37.     On May 17, 2022, the Plantronics Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

a.  Whether the confidentiality agreements entered into by the Company with HP differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

b.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, would fall away; and

c.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Plantronics's Financial Projections*

39.     The Proxy Statement fails to provide material information concerning financial projections for Plantronics provided by Plantronics management to the Board and Morgan Stanley and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.     Notably the Definitive Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed, "certain internal financial statements and other financial and operating data concerning Poly."

41.     Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Plantronics management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42.     With regard to the *Prospective Unaudited Financial Information* Projections prepared by Plantronics, the Proxy Statement fails to disclose material line items for the following metrics:

    a.  With respect to *Credit Case*

        i.  EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings, interest and depreciation and amortization of intangible assets.

    b.  With respect to *Field Case*

        i.  EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings, interest and depreciation and

1    amortization of intangible assets.

2        43.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to

3    GAAP metrics utilized in the projections.

4        44.    This information is necessary to provide Plaintiff in his capacity as a Company

5    stockholder a complete and accurate picture of the sales process and its fairness.    Without this

6    information, Plaintiff is not fully informed as to Defendants' actions, including those that may have

7    been taken in bad faith, and cannot fairly assess the process.

8        45.    Without accurate projection data presented in the Proxy Statement, Plaintiff is

9    unable to properly evaluate the Company's true worth, the accuracy of the Morgan Stanley's

10   financial analyses, or make an informed decision whether to vote in favor of the Proposed

11   Transaction.    As such, the Board has violated the Exchange Act by failing to include such

12   information in the Proxy Statement.

13       *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

14       *Morgan Stanley*

15       46.    In the Proxy Statement, Morgan Stanley describes its fairness opinion and the

16   various valuation analyses performed to render such opinion.    However, the descriptions fail to

17   include necessary underlying data, support for conclusions, or the existence of, or basis for,

18   underlying assumptions.    Without this information, one cannot replicate the analyses, confirm the

19   valuations or evaluate the fairness opinions.

20       47.    With respect to the *Public Trading Comparables Analysis*, the Proxy Statement

21   fails to disclose the following:

22           a.    The specific inputs, metrics, and assumptions for each compared company;

23           b.    The specific inputs, metrics, and assumptions used to determine ranges of

24               AV/CY2022E EBITDA of 8.0x – 11.0x;

25           c.    The specific inputs, metrics, and assumptions used to determine ranges of

26               AV/CY2023E EBITDA of 7.0x – 10.0x; and

27           d.    The number of fully diluted outstanding shares for the Company as of March 23,

28

1    2022.

2         48.    With respect to the *Discounted Equity Analysis*, the Proxy Statement fails to

3    disclose the following:

4              a.   The specific inputs, metrics, and assumptions used to determine ranges reference

5                   ranges for AV/CY2022E EBITDA of 8.0x – 11.0x;

6              b.   The input used for the Company's future-implied fully diluted equity value;

7              c.   The input used for the Company's estimated future diluted shares outstanding;

8              d.   The future equity value per share calculated for the Company; and

9              e.   The specific inputs, metrics, and assumptions used to determine a discount rate of

10                  13.1%.

11        49.    With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to

12   disclose the following:

13             a.   The specific inputs, metrics, and assumptions used to determine a discount rate

14                  ranging from 8.3 to 9.2%;

15             b.   The utilized weighted average cost of capital;

16             c.   The specific inputs, metrics, and assumptions used to determine perpetual growth

17                  rates of 0.0 to 2.0%;

18             d.   The Company's net debt;

19             e.   The specific terminal value for the Company calculated;

20        50.    With respect to the *Precedent Transactions Multiples Analysis*, the Proxy

21   Statement fails to disclose the following:

22             a.   The aggregate value of each transaction compared; and

23             b.   The specific inputs, metrics, and assumptions used to determine the representative

24                  ranges of ratios of aggregate value to estimated NTM EBITDA of 8.0x to 12.0x.

25        51.    With respect to the *Illustrative Precedent Transaction Premiums*, the Proxy

26   Statement fails to disclose the following:

27             a.   The specific precedent transactions compared for each transaction;

28

COMPLAINT

b.   The aggregate value of each transaction compared; and

c.   The inputs, metrics, and assumptions utilized for each precedent transaction.

52.   With respect to the *Equity Research Analysts' Future Price Targets* section, the Proxy Statement fails to disclose the following:

a.   The specific equity research price targets utilized; and

b.   The identity of the analyst and equity research firm that generated them.

53.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Plantronics stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55.   Plaintiff repeats all previous allegations as if set forth in full herein.

56.   Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

62.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Plantronics' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result,

the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.     The Individual Defendants acted as controlling persons of Plantronics within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Plantronics to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Plantronics and all of its employees.  As alleged above, Plantronics is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

1    **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury on all issues which can be heard by a jury.

3

Dated: May 20, 2022                    **BRODSKY & SMITH**

4

                              By: _____

5                                    Evan J. Smith, Esquire (SBN 242352)
                                     esmith@brodskysmith.com
6                                    Ryan P. Cardona, Esquire (SBN 302113)
                                     rcardona@brodskysmith.com
7                                    9595 Wilshire Blvd., Ste. 900
                                     Phone: (877) 534-2590
8                                    Facsimile (310) 247-0160

9

10                                   *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28